**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CLODILE ROMERO,** *et al.*                                        **CIVIL ACTION**

                                                                   **No. 04-2312**
**VERSUS**                                                         **c/w 04-2436**
                                                                   **REF: 04-2436**

**US UNWIRED,** *et al.*                                           **SECTION: I**

<u>**ORDER AND REASONS**</u>

Before the Court is the motion of plaintiff, Don Feyler, for

a temporary restraining order pursuant to Rule 65 of the Federal

Rules of Civil Procedure.[1]  Plaintiff, an individual shareholder

---

[1] Rule 65 provides:
(a) Preliminary Injunction.
(1) Notice.  No preliminary injunction shall be issued without
notice to the adverse party.
(2) Consolidation of Hearing With Trial on Merits.  Before or after
the commencement of the hearing of an application for a preliminary
injunction, the court may order the trial of the action on the
merits to be advanced and consolidated with the hearing of the
application. Even when this consolidation is not ordered, any
evidence received upon an application for a preliminary injunction
which would be admissible upon the trial on the merits becomes part
of the record on the trial and need not be repeated upon the trial.
This subdivision (a)(2) shall be so construed and applied as to save
to the parties any rights they may have to trial by jury.
(b) Temporary Restraining Order; Notice; Hearing; Duration.  A
temporary restraining order may be granted without written or oral
notice to the adverse party or that party's attorney only if (1) it
clearly appears from specific facts shown by affidavit or by the
verified complaint that immediate and irreparable injury, loss, or
damage will result to the applicant before the adverse party or that
party's attorney can be heard in opposition, and (2) the applicant's
attorney certifies to the court in writing the efforts, if any,

of the nominal defendant, US Unwired, seeks to enjoin 1) the

merger of Sprint Corporation ("Sprint") and US Unwired; 2)

Sprint's tender offer of US Unwired's shares; and 3) any

additional proxy or tender of shares.  Plaintiff's injunction

request is based on the alleged failure of the defendant

corporate officers and directors[2] to disclose all material

---

which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.
(c) Security.  No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof.

[2] The defendant corporate officers/directors of US Unwired are:  Robert W. Piper, president of US Unwired since 1995, and chief executive officer (CEO) since 2000; William L. Henning, Jr., chairman of the board of directors of US Unwired; Jerry E. Vaughn, chief financial officer (CFO) of US Unwired; Lawrence C. Tucker, a director of US Unwired; Thomas G. Henning, secretary, general counsel, and a director of US Unwired; Henry P. Hebert, Jr., a director of US Unwired; Harley Ruppert, a director of US Unwired; Thomas J. Sullivan, a director of US Unwired; Christopher J. Stadler, a director of US Unwired; Charles T. Cannada, a director of US Unwired; Andrew C. Cowen, a director of US Unwired; William L. Henning, a director of US Unwired; John A. Henning, a director of US

-2-

information that US Unwired shareholders would consider important in deciding whether to tender their shares.

In his temporary restraining order motion, plaintiff specifically contends that US Unwired's directors and officers failed to disclose:  1) the basis for the zero valuation of the US Unwired-Sprint litigation settlements; 2) the impact of the merger on plaintiff's pending derivative lawsuit and the resulting "interestedness of the US Unwired Director's in the merger;" and 3) information concerning US Unwired's financial projections and analyses relied upon by Evercore Group, Inc. ("Evercore") in connection with its fairness opinion.[3]  Through subsequent additional disclosures made by US Unwired to the Securities and Exchange Commission ("SEC"), plaintiff concedes that only the third issue remains.[4]

### Background

Feyler's motion for a temporary restraining order arises out

---

Unwired.  Rec. Doc. No. 1 (Civ. A. 04-2436), ¶¶ 11-23.

[3] Plaintiff also claims that US Unwired's directors unlawfully agreed to "no-soliciation" and termination fee provisions and had a conflict of interest based on insurance and indemnification provisions in the merger agreement. Plaintiff does not raise these claims with respect to his temporary restraining order motion or his supplemental memorandum, and the Court construes plaintiff's failure to address these claims as a concession that such claims are inappropriate for injunctive relief.

[4] Rec. Doc. No. 43, plaintiff's supplemental memorandum. *See also id.*, at exhibits B and D.  While defendant's additional disclosures appear to resolve plaintiff's complaints regarding the US Unwired-Sprint litigation settlements and the impact of the merger on the pending derivative lawsuit, plaintiff maintains that a temporary restraining order should issue to allow the tender process to be restarted, allowing shareholders who have already tendered their shares to vote again in a fully informed manner. *Id.* at 2, 5-6.

of his shareholder derivative action based on, *inter alia*, the
settlement of two lawsuits between Sprint and US Unwired.[5]  US
Unwired, a Louisiana corporation with its principle place of
business in Lake Charles, Louisiana, is a Sprint PCS affiliate.
Between March, 2005, and July 10, 2005, defendants negotiated the
sale of US Unwired to Sprint.  US Unwired retained Evercore as
its financial advisor and Evercore provided a fairness opinion to
US Unwired's board.

On July 15, 2005, Sprint commenced its tender offer to
acquire all of US Unwired's outstanding shares for $6.25 per
share, which offer is set to expire at midnight on August 11,
2005.  The tender offer document was filed with the SEC and set
forth the terms of Sprint's offer to purchase, the conditions for
acceptance and payment for the shares, the shareholders' right to
withdraw their tender "at any time prior to the applicable
scheduled expiration date," and a discussion of the shareholders'
right to dissent and demand the fair cash value of their shares
through a statutory appraisal process pursuant to Louisiana law.[6]
Also on July 15, 2005, US Unwired filed its recommendation
statement on Schedule 14D-9, which included the fairness opinion

---

[5] Feyler's shareholder derivative lawsuit followed and was subsequently
consolidated with the shareholder class action filed by Clodile Romero.  Feyler's
action contains many of the same allegations found in the Romero action.  *See*
Rec. Doc. Nos. 1, 23, and 28 (Civ. A. 04-2312); Rec. Doc. No. 1 (Civ. A. 04-
2436).  The underlying lawsuits between Sprint and US Unwired were filed in the
United States District Court for the Western District of Louisiana.

[6] Rec. Doc. No. 44.  *See id.*, exhibit 3.

-4-

provided by Evercore in connection with Sprint's proposed tender

offer.[7]

Apparently, in response to plaintiff's motion, on August 1,

2005, US Unwired issued an amendment to the 14D-9, which expanded

upon certain disclosures, i.e. the basis for a zero valuation of

the Sprint litigation.[8]  On August 4, 2005, US Unwired filed a

second amendment to its 14D-9.[9]  The second amendment disclosed

information related to the value of the US Unwired-Sprint

litigation and the possibility, under Delaware law, of Feyler's

derivative claims being dismissed upon completion of the merger.

### Law and Analysis

Before any temporary restraining order issued, defendants

received notice of plaintiff's motion.  The Court held an

adversary hearing on August 10, 2005.  In a situation such as

this where notice and a hearing have occurred, the Court follows

the same procedure as it would for a preliminary injunction

motion.  *See Kansas Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548,

1551 (D. Kan. 1993) (citing 11 CHARLES A. WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 2951 (1973)); *see also Fourco Glass*

*Co. v. Zuckerberg*, 470 F. Supp. 273, 275 (E.D. Tenn. 1978).

In order to obtain either a preliminary injunction or a

---

[7] Rec. Doc. No. 44, exhibit 2.

[8] Rec. Doc. No. 44, exhibit 4.

[9] Rec. Doc. No. 44, exhibit 5.

temporary restraining order, the movant bears the burden of proving four substantive requirements.  *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 441, 94 S. Ct. 1113, 1125, 39 L. Ed. 2d 435 (1974) (party seeking injunction bears burden of demonstrating factors justifying injunction).

> The four prerequisites to the issuance of a preliminary injunction are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest.

*In re Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995); *see Enterprise Int'l, Inc. v. Corp. Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).  "In considering these four prerequisites, the court must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion."  *Callaway*, 489 F.2d at 573.

The parties agree that Louisiana law governs plaintiff's claims; however, the parties have also recognized that the Court may need to look to Delaware law.  *See* Rec. Doc. No. 45; *see also Armand v. McCall*, 570 So. 2d 158, 160 (La. App. 3d Cir. 1990) (stating "[t]he state of Delaware is recognized as a leader in

the field of corporation law."); *see e.g., A. Copeland Enters., Inc. v. Guste*, Civ. A. No. 88-4706, 1988 WL 129313, at *4 (E.D. La. Nov. 28, 1988) (applying Delaware law and the law of other states in deciding a preliminary injunction motion regarding a merger between a Louisiana corporation and a Texas corporation).

A.   Financial Disclosures

Plaintiff's main claim is that defendants breached their fiduciary duties by failing to disclose financial projections (and other unidentified information) considered by Evercore in its fairness opinion.  In order to claim a violation of the duty of disclosure, plaintiff must allege facts missing from the disclosure statement, identify those facts, state why they are required or otherwise material, and allege how the omission caused injury.  *See Malpiede v. Townson*, 780 A.2d 1075, 1086-87 (Del. 2001) (recognizing that the fiduciary duty of disclosure is not an independent duty and that it arises from the general fiduciary duties of care and loyalty).  With respect to disclosures vis-a-vis a corporate merger, materiality denotes that, "[t]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Id.* at 1086 (citing *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994)).

In its tender offer, Sprint provided four years of financial projections (2005-2008) it had received from US Unwired which projected US Unwired's future business and operating performance were it to remain independent.[10]  Plaintiff does not assert that those projections are different than those relied upon by Evercore.  Instead, plaintiff suggests that defendants' failure to disclose all of the projections provided to Evercore, namely the projections for the years 2009-2014, materially affected the shareholders' ability to make a fully informed decision.

Plaintiff argues that the Delaware Chancery Court's decision in *In re Pure Resources, Inc., Shareholders Litigation* (hereinafter, "*Pure Resources*"), 808 A.2d 421, 452-53 (Del. Ch. 2002), unequivocally provides this Court a basis to grant plaintiff's motion.  In *Pure Resources*, the court granted plaintiff's preliminary injunction motion based upon the fact that the corporate board defendants had failed to disclose to the shareholders certain material information underlying the corporation's investment bankers' fairness opinion.  *Id.* at 448-50.  Plaintiff submits that in granting the injunction, the *Pure Resources* court rejected the holdings of two earlier Delaware court decisions that had found such a failure to be immaterial. *Id.* at 449 (discussing *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170 (Del. 2000), and *Matador Capital Mgmt. Corp. v. BRC*

---

[10] Rec. Doc. No. 44, exhibit 3, at 15-16.

*Holdings, Inc.*, 729 A.2d 280 (Del. Ch. 1998)).  However, the *Pure Resources* court's holding was not so expansive; rather, it held that a tender offer made by a controlling shareholder, e.g. a shareholder holding a majority of the voting power of the corporation, for minority-held shares requires that the subject company provide a "fair summary of the substantive work performed by the investment bankers."[11]  *Id.*

As defendants cogently detail, *Pure Resources* involved a situation quite different from the one before this Court.  *Pure Resources* involved a controlling shareholder's tender for minority shares, which is similar to a "going private" transaction.[12]  The case before this Court involves a third party tender offer:  Sprint's tender offer for US Unwired does not implicate the same concerns that the *Pure Resources* court faced,

_____

[11] The court found the basic valuation of the investment bankers' fairness opinion material because, *inter alia*, the tender offer was made by a Pure Resources' majority shareholder who had "large informational advantages."  *Id.* The court continued to explain why it found the information material:

> When controlling stockholders make tender offers, they have large information advantages that can only be imperfectly overcome by the special committee process, which almost invariably involves directors who are not involved in the day-to-day management of the subsidiary.  The retention of financial advisors by special committees is designed to offset some of this asymmetry, and it would seem to be in full keeping with that goal for the minority stockholders to be given a summary of the core analyses of these advisors in circumstances in which the stockholders must protect themselves in the voting or tender process . . . .

*Id.* at 450.

[12] "In going-private transactions, a controlling stockholder typically acquires the shares of the minority stockholders in a public company in exchange for cash, debt or stock, resulting in the delisting of the company."  Michael J. McGuinness & Timo Rehbock, *Going-Private Transactions: A Practitioner's Guide*, 30 DEL. J. CORP. L. (2005).

-9-

i.e. protecting minority shareholders, as this case does not involve a transaction initiated by a controlling shareholder who may be privy to information that others are not.   This Court finds *Pure Resources* inapposite and concludes that on the reasoning of *Pure Resources* alone, plaintiff has not maintained his burden.[13]   *See Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173-74 (Del. 2000); *In Re Dataproducts Corp. Shareholders Litigation*, Civ. A. No. 11164, 1991 WL 165301, *8 (Del. Ch. Aug 22, 1991).

Furthermore, Sprint's tender offer explains the basis for disclosing some, rather than all, of the financial projections generated by US Unwired and provided to Sprint and Evercore:

> [US Unwired] does not, in the ordinary course, make public any specific forecasts or projections as to its future financial performance and these projections were not prepared with a view to public disclosure.   They [2005-2008] are included in this Offer to Purchase only because they were provided to Sprint and the Offeror [UK Acquisition Corp., a wholly owned subsidiary of Sprint Corp.] in connection with Sprint's due diligence.   Later years have not been included due to the inherent unreliability of longer term projections.   Such later year projections also diverge substantially from available investment banking analyst estimates.

Rec. Doc. No. 45, exhibit 3 (Tender Offer Statement), p. 15.

---

[13] The only other authority provided to the Court in support of plaintiff's nondisclosure claim is *Alinda v. Internet.com Corp.*, Civ. A. No. 17235-NC, 2002 Del. Ch. LEXIS 156 (Del. Ch. Nov. 6, 2002).   Without discussion or analysis of the case, plaintiff asserts that *Alinda* supports a finding that information omitted is material and must be provided to the shareholders.   However, in *Alinda*, the court merely found that the plaintiff's allegations were sufficient to survive a motion to dismiss.   *Id.* at *37.   No other authority to support his claim has been cited.

Plaintiff has made no showing that US Unwired's projections for

the years 2009-2014 are material.  While plaintiff asserts

generally that such information would be helpful to the

shareholders so that they could do their own valuation based on

US Unwired's projections for these years, information which is

helpful is not necessarily *material*, i.e. substantially likely

that it would have been viewed by the reasonable investor as

having significantly altered the total mix of information made

available.  As Sprint's tender offer statement makes clear, US

Unwired does not typically disclose such information, and Sprint

struck a balance by disclosing the projections for 2005-2008, and

omitting the information it found to be highly speculative and/or

unreliable.

      Based on the arguments of the parties made at oral argument

and in their memoranda, the Court is not persuaded that plaintiff

has shown a substantial likelihood of success with respect to his

claim that the failure to disclose US Unwired's financial

projections for 2009-2014 was a material breach of defendants'

fiduciary duties.

      B.   Re-issuance or Extension of the Tender Offer and/or
Filing a Press Release

      Plaintiff also claims that a temporary restraining order is

necessary to allow the shareholders to vote again, fully

informed.  Alternatively, plaintiff requests that the Court order

defendants to file a press release, detailing 1) the existence of

-11-

the two amendments; 2) the projections allegedly used by Evercore

for the years 2009-2014; and 3) reiterating the shareholders'

right to withdraw the tendering of their shares.[14]   Plaintiff

seeks a twenty-four (24) hour extension of the tender offer in

order to allow the shareholders time to digest the contents of

the requested press release.

In support of the proposition that the tender offer should

be extended or again disseminated, plaintiff cites *Piper v.*

*Chris-Craft Industries, Inc.*, 430 U.S. 1, 97 S. Ct. 926, 51 L.

Ed. 2d 124 (1977).  At oral argument and in its supplemental

memorandum, plaintiff suggests that the district court in *Piper*

ordered that the Bangor Corporation offer rescission to the

tendering shareholders.  However, *Piper* involved, among other

issues, the United State Supreme Court's interpretation of the

Securities Exchange Act of 1934.  In *Piper*, the respondent,

Chris-Craft Industries, an unsuccessful tender offeror in a

takeover contest, contended that its failure to procure voting

control of Piper Aircraft through cash and exchange tender offers

was caused by the appellants' violations of section 14(e) of the

Securities and Exchange Act of 1934 and Rule 10b-6 of the

Securities and Exchange Commission.  Chris-Craft sought damages

and injunctive relief against the management of the target

_____

[14] Plaintiff asserted his request that defendants file a press release for
the first time at oral argument.

-12-

corporation, its investment advisor, and the successful tender

offeror.   The U.S. Supreme Court held that, because tender

offerors are not within the class of investors intended to be

protected by section 14(e), they have no standing to sue for

damages pursuant to that section.   The only portion of the *Piper*

Court's decision which is arguably relevant is the Court's

rendition of the background facts, where the Court noted that the

district court, apparently on the SEC's motion, required the

corporation to offer rescission to tendering shareholders.   430

U.S. at 12, 97 S. Ct. 934-35.   The *Piper* Court's recitation of

the procedural history offers no credence to plaintiff's

argument.   Therefore, the Court finds that the Supreme Court's

decision in *Piper* provides no support for plaintiff's request

that the tender offer be extended or re-run.

       Defendants recognize, however, that pursuant to SEC

regulations, they would be required to re-disseminate the

amendments to the shareholders if the omitted information is

material.   *See* 17 C.F.R. §§ 240.14d-4; 240.14d-9; 240.14e-2.   As

stated, in order for the omissions complained of to be material,

"there must be a *substantial* likelihood that the disclosure of

the omitted fact would have been viewed by the *reasonable*

*investor* as having *significantly* altered the 'total mix' of

information made available."   *Kapps v. Torch Offshore Inc.*, 379

F.3d 207, 214 (5th Cir. 2004) (emphasis in original) (quoting

*Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed.
2d 194 (1988)).  Such an inquiry looks to "whether 'the
information allegedly omitted or misrepresented in the prospectus
was material, in the sense that it would have altered the way a
reasonable investor would have perceived the total mix of
information available in the prospectus as a whole."  *Id.*
(quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435 (5th Cir.
1993)).

Plaintiff makes no showing that any omission was material
such that he is entitled to a temporary restraining order so that
the shareholders can decide (or decide again) whether to tender
their shares based on the financial projections for 2009-2014 or
any other alleged non-disclosure.  Furthermore, any shareholder
who has tendered his or her shares has not done so irrevocably.
Both Sprint's tender offer and US Unwired's 14D-9 statement make
clear that the shareholders who have tendered their shares have
the right to revoke until midnight on August 11, 2005.

Even assuming that plaintiff had shown a modicum of
materiality and thereby established some likelihood that he would
prevail on the merits, plaintiff has made no showing that his
threatened injury outweighs the threatened harm an injunction may
cause US Unwired and its shareholders.  *See Enter. Int'l, Inc. v.
Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th
Cir. 1985).  Should the Court enjoin the merger, the tendering

-14-

shareholders would be deprived of the timely distribution of cash and an injunction could compromise Sprint's $1.3 billion tender offer.[15]  Plaintiff suggests that the balance of the equities weighs heavily in his favor because if the defendants are allowed to complete the proposed acquisition, they will have avoided their duties owed to plaintiff, US Unwired, and its shareholders. Given this Court's finding that plaintiff's likelihood of success is minimal, the balance tips in favor of denying the temporary restraining order.  *See Canal Auth.*, 489 F.2d at 576-77 (applying sliding scale approach to the factors for a preliminary injunction).

Finally, with respect to plaintiff's request that the Court order defendants to file a press release and enjoin the tender offer for 24 hours, much of the information which plaintiff would like to see included in a press release has already been disclosed to the public by way of Sprint's original tender offer, the subsequent amendments to the 14D-9, and through the SEC and its website.[16]

Based on the record before the Court and for the above and foregoing reasons, **IT IS ORDERED** that plaintiff's motion for a temporary restraining order is **DENIED.**

---

[15] Rec. Doc. No. 45, pp. 20-21.

[16] Sprint's tender offer statement informed the shareholders of their right to withdraw their tender before the expiration date, the 14D-9 amendments are publicly available through the SEC, and the existence of the financial projections is at least intimated in Sprint's tender offer statement.

**IT IS FURTHER ORDERED** that plaintiff's motion for expedited discovery and to set a preliminary injunction briefing schedule is **DENIED.**

New Orleans, Louisiana, August __11th__, 2005.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

-16-