# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLODILE ROMERO, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 04-2312** |
| **US UNWIRED, INC., ET AL.** | **SECTION I/5** |

### ORDER AND REASONS

Before the Court is a motion for partial judgment on the pleadings filed by defendants, US Unwired, Inc. and William L. Henning ("Movants").[1] Plaintiff, Clodile Romero, Jr., opposes the motion. For the following reasons, the motion is **DENIED**.

### *BACKGROUND*

US Unwired was a Louisiana telecommunications corporation headquartered in Lake Charles, Louisiana.[2] It provided wireless mobile communication services to subscribers and it was, for some time, a network partner of Sprint PCS, the personal communications group within the Sprint corporation.[3] As a network partner, US Unwired had the exclusive right to provide PCS services in 14 states under the Sprint PCS brand name.[4]

On August 12, 2004, plaintiff filed this lawsuit alleging that defendants violated the anti-fraud provisions of the Securities Exchange Act of 1934 by making misleading statements or omissions regarding the business of US Unwired.[5] Plaintiff alleged that defendants violated securities laws in essentially two ways: (1) misrepresenting to investors the risks and negative

---

[1] R. Doc. No. 151.
[2] R. Doc. No. 107.
[3] R. Doc. No. 79, p. 3.
[4] R. Doc. No. 71, Mem. p. 2, n. 2.
[5] R. Doc. No. 1.

1

effects of US Unwired switching from a Sprint PCS Type III affiliate to a Sprint PCS Type II affiliate; and (2) misrepresenting the negative effect of a no-deposit credit program for high risk customers.

On August 11, 2006, the Court granted defendants' motions to dismiss and dismissed all of plaintiff's claims. Plaintiff appealed, and the United States Court of Appeals for the Fifth Circuit affirmed in part and reversed in part.[6] The Fifth Circuit affirmed the dismissal of plaintiff's claims related to US Unwired's conversion to a Type II affiliate, but reversed the dismissal of plaintiff's claims related to the no-deposit subscriber programs.[7] On June 19, 2009, this Court ordered plaintiff to file a new complaint containing those claims still viable in light of the Fifth Circuit's ruling.[8]

Plaintiff filed his third amended complaint ("TAC") on July 21, 2009.[9] On August 20, 2009, movants filed this motion for judgment on the pleadings arguing that that the TAC does not state a claim against defendant, William Henning. Movants argue that plaintiff has failed to plead either primary or controlling person liability with respect to Henning.

## *STANDARD OF LAW*

I. **Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion is subject to the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).

---

[6] Lormand v. US Unwired, Inc., 565 F.3d 228 (5th Cir. 2009).
[7] Id.
[8] R. Doc. No. 141.
[9] R. Doc. No. 143.

According to the United States Court of Appeals for the Fifth Circuit, " 'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (citing Herbert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990)). When analyzing such a claim, " '[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'" Id. (citing Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)). Further, a district court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). The Court evaluates the complaint in the light most favorable to the plaintiff and accepts "all well-pleaded facts as true." Id.

Pursuant to Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Greenberg v. Gen. Mills Fun Group, Inc., 478 F.2d 254, 256 (5th Cir. 1973). The issue is whether the plaintiff is entitled to offer evidence to support his claim, not whether he will ultimately prevail on the merits. Great Plains Trust Co.. 313 F.3d at 313.

## DISCUSSION

### A. Primary Liability

"To state a securities-fraud claim under section 10(b), and Rule 10b-5, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." Southland

Securities Corp. v. Inspire Ins. Solutions, Inc., 365 F.3d 353, 362 (5th Cir. 2004) (rehearing denied). At issue in this motion is whether Henning made a misstatement and whether he acted with scienter.

1. Statement or omission

Defendant argues that plaintiff does not plead a violation of Rule 10b-5 of the Securities Exchange Act of 1934 because the TAC "does not specify with particularity any false statements or omissions that Henning is alleged to have made."[10] Although movants concede that Henning signed a 10-K, movants argue that Henning's signature on a 10-K alone is insufficient to link him to the false document.

Under the Private Securities Litigation Reform Act ("PSLRA"), plaintiffs must "distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." Southland, 365 F.3d at 365 (emphasis in original). Plaintiffs must provide specific factual allegations to link an individual defendant to the statement at issue. Id.

A signature of the corporate officer on the document is a specific allegation that ties the officer to the statement. See Id.; see also In re Enron Corp Securities, Derivative & ERISA Litigation, 258 F.Supp.2d 576, 587 (S.D.Tx. 2003) (noting that a corporate official that signs a fraudulent 10-K makes a statement for the purposes of § 10b and citing cases in support of that principle); In re JWP Inc., Sec. Litig., 928 F.Supp. 1239, 1255-56 (S.D.N.Y. 1996) (corporate directors that sign a fraudulent 10-K while acting with scienter can be liable for making a false statement); cf. Wojtunik v. Kealy, 394 F.Supp.2d 1149, 1165 (D. Ariz. 2005) (holding that the mere signature of an outside director is insufficient, by itself, to link the director to a

---

[10] R. Doc. No. 151-1, p. 2.

misrepresentation).[11] Accordingly, plaintiff's TAC sufficiently pleads a statement alleged to be falsely made by Henning.

   2.  Scienter

"The required state of mind [for scienter] is an intent to deceive, manipulate, or defraud or severe recklessness." Lormand, 565 F.3d at 251 (quoting Ind. Elec. Workers' Pension Trust Fund v. Shaw Group, Inc., 537 F.3d 527, 533 (5th Cir. 2008)). To sufficiently plead scienter, the inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 252. Courts making the scienter inquiry are permitted to rely on allegations of circumstantial evidence, and they should look collectively at all of the facts alleged. Id. at 251.

As movants correctly note, the TAC is largely lacking in allegations related to Henning, particularly with respect to whether Henning acted with scienter. Although the TAC contains allegations related to Henning's concerns with US Unwired's transition to a Type II affiliate, the allegations concerning Henning's knowledge of problems with the no-deposit programs are based entirely on allegations that: (1) Henning signed the allegedly fraudulent 10-K in March, 2002; (2) Henning was present at a board meeting in July, 2002, wherein the board discussed problems with bad debt and churn; and (3) Henning sold 73% of his Class A stock during a one-year period commencing in June, 2001.[12]

While the Court has serious doubts concerning plaintiff's ability to demonstrate that Henning acted with scienter, the Court is persuaded that, at this stage, plaintiff has survived this

---

[11] In addition to allegations that the defendant made a false statement, plaintiff and movants both note that in order to plead a case against both officers and, as here, non-management directors, the allegations in the complaint must show a strong inference of scienter. See Southland, 365 F.3d at 363. The Court will analyze the allegations of scienter below.

[12] Although stock sales can "meaningfully enhance the strength of the inference of scienter," this is true of trading only when it is done "in suspicious amounts or at suspicious times." Southland, 365 F.3d at 368. The Court notes that plaintiff's allegations concerning Henning's stock sales are generally lacking in the context necessary to support an inference of scienter.

5

motion. More particularly, the Court notes that the issue of scienter may be foreclosed by the Fifth Circuit's opinion in this matter. See Lormand , 565 F.3d at 252-53 ("The [second amended complaint's] allegations also give rise to a strong inference that the defendants acted with scienter in concealing their knowledge that US Unwired's use of the no-deposit programs in its demographic areas would inevitably be severely harmful or disastrous economically for the company."). Although the Fifth Circuit did not focus on the specific arguments now present before this Court, this Court is reluctant to ignore the Fifth Circuit's quoted language and to speculate whether, in the context of a Rule 12(c) motion, such language is binding. Movants' arguments concerning the sufficiency of proof with respect to Henning's scienter are more appropriately addressed in a motion for summary judgment.[13]

**B. Control person liability**

Section 20(a) of the Securities Exchange Act creates liability for any person "who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Plaintiffs seeking to prove a cause of action under Section 20(a) must prove: (1) a primary violation by a controlled person; and (2) that the defendant had actual control or influence over the primary violator. In re OCA, Inc., Securities and Derivative Litig., No. 05-2165 2006 WL 3747560 at * 23 (E.D.La. Dec. 14, 2006) (Vance, J.).

As noted by both this Court and the Fifth Circuit, plaintiff has adequately pleaded a primary violation by US Unwired and the individual defendants. The Court further concludes that plaintiff has alleged sufficient facts to suggest that Henning had actual control or influence

---

[13] Because of this Court's conclusion with respect to the merits of movants' motion, the Court does not reach plaintiff's arguments concerning waiver.

6

over the primary violator. During the putative class period, Henning was the Chairman of US Unwired's Board of Directors and he had, until taking that role, served for over a decade as US Unwired's CEO.[14] As Chairman of the Board of Directors, Henning signed one of the allegedly fraudulent SEC filings. Additionally, plaintiff's TAC attached copies of Henning's correspondence[15] that suggest that, far from being a figurehead, Henning exercised influence in setting policy for US Unwired and that he was aware of the additional risks posed by the no-deposit programs.[16] Accordingly, the Court finds that plaintiff has adequately alleged that Henning was a "controlling person" under Section 20(a) of the Exchange Act.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the motion for judgment on the pleadings is **DENIED**.

New Orleans, Louisiana, February 23, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[14] R. Doc. No. 143, para. 21.
[15] As defendant correctly notes, exhibit "BB" to the TAC copies *Thomas* Henning and not William Henning. The Court did not consider this letter in its weighing of the allegations against William Henning.
[16] See R. Doc. No. 143, paras. 56, 64, 89, and 126.

7