UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLODILE ROMERO, JR., Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>US UNWIRED, INC., et al.,<br><br>                    Defendants. | Civil Action No. 04-2312<br><br>SECTION I/5 |

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION OF**
<u>**SETTLEMENT PROCEEDS AND INCORPORATED MEMORANDUM OF LAW**</u>

I.      **INTRODUCTION**

Lead Plaintiff Billy Lormand ("Lead Plaintiff") respectfully submits this memorandum of law in support of his motion for final approval of the proposed settlement of this class action and the Plan of Allocation of settlement proceeds. The proposed settlement consists of $9.7 million in cash. An overview of Lead Plaintiff's claims and a brief history of the case are detailed in the Declaration of Jack Reise in Support of Approval of the Proposed Settlement, Award of Attorneys' Fees and Reimbursement of Expenses, and Plan of Allocation of Settlement Proceeds ("Reise Declaration" or "Reise Decl."), filed herewith. As set forth in the Reise Declaration, the thrust of this securities class action is that US Unwired Inc. ("US Unwired" or the "Company") and certain of its officers and directors (the "Individual Defendants") violated the federal securities laws by making false and misleading statements concerning the Company's relationship with Sprint PCS and anticipated subscriber growth from May 7, 2001 until July 18, 2002 (the "Class Period").[1]

After conducting an extensive factual investigation, successfully opposing Defendants' motion to dismiss – which process included a successful appeal to the Fifth Circuit Court of Appeals – and Defendant Henning's motion for judgment on the pleadings, analyzing issues related to loss causation, materiality, and damages, working with numerous experts, and attending two separate mediations, Lead Plaintiff agreed to the present settlement. This settlement is a favorable result given the serious disputes between the parties concerning liability and damages, the certainty of a

---

[1]     All capitalized terms not defined herein have the same meanings set forth in the Stipulation of Settlement, previously filed with the Court on July 15, 2010.

1

present recovery, the risks and expense of further litigation, and the favorable reaction of the Settlement Class.

For the reasons discussed below and in the Reise Declaration, Lead Counsel respectfully submit that the settlement is fair and adequate and recommend that it be approved by the Court.

## II. THE STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure provides that class actions shall not be dismissed without approval of the court. Judicial approval of class action settlements is intended to insure that the rights of absent class members are adequately protected. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997). However, when evaluating a proposed class action settlement, the trial judge "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).[2]

In approving a proposed settlement of a class action in this Circuit, the court must find that the proposed settlement is "fair, adequate and reasonable," and that it is not the result of collusion between the parties. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Where a settlement has been reached through arm's length negotiations by competent counsel, courts accord counsel's opinion great weight, and presume the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). Indeed, the court "is entitled to rely upon the

---

[2] Internal citations, footnotes, and quotations are omitted, and emphasis is added, unless otherwise noted.

judgment of experienced counsel," and "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330.

Courts in the Fifth Circuit consider six factors in determining whether to approve a proposed settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172. "In considering these factors, there is a strong presumption in favor of finding the settlement fair." *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619 (E.D. La. 2006). Moreover, the Fifth Circuit has recognized the "overriding public interest in favor of settlement" of class action suits in light of their "well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331.

As discussed below, examination of these factors establishes that this settlement is both fair and reasonable and should be approved.

### III.   THE PROPOSED SETTLEMENT MEETS THE FIFTH CIRCUIT STANDARDS FOR APPROVAL

#### A.   This Settlement Was Not the Product of Fraud of Collusion

In the absence of any affirmative evidence to the contrary, courts may presume that settlement negotiations are free from fraud or collusion. *See Camp v. Progressive Corp.*, Nos. Civ.A. 01-2680, Civ.A. 03-2507, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (citing Alba Conte, Herbert B. Newberg, 4 *Newberg on Class Actions* § 11.51 (4th ed. 2002)); *see also Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *19 (N.D. Tex. Dec. 11, 2003) (rejecting claim of fraud or collusion because objector pointed to no evidence in record

3

supporting her claim). Here, there has been no fraud or collusion in the parties' settlement negotiations, nor has there been any allegation of such. To the contrary, this settlement was reached after extensive arm's length negotiations, which included the parties' participation in two separate, day-long mediation sessions – one in January 2010 and another in February 2010 – with the Honorable Nicholas H. Politan, retired United States District Judge.

During these mediation sessions, the parties presented their respective views regarding the merits of the litigation and available defenses. The impact of the Fifth Circuit's order was discussed, as was the likelihood for class certification and the probability of Lead Plaintiff's success at trial. The settling parties then reached an agreement-in-principle to settle the litigation, and because there is no evidence of any fraud or collusion, the first *Reed* factor supports approval of this settlement.

### B.   The Stage of Proceedings and Discovery Completed Provide Sufficient Information to Negotiate an Adequate and Reasonable Settlement

This factor focuses on whether the parties had sufficient information to make informed settlement decisions. At the time the parties considered the possibility of settlement, Lead Counsel had conducted an extensive factual and legal investigation of Lead Plaintiff's claims. They reviewed years' worth of US Unwired's public filings, annual reports and other public statements; conducted numerous interviews with former employees of the Company; reviewed documents filed in connection with related litigation between US Unwired and Sprint PCS; met with consultants in the areas of loss causation and damages; successfully opposed Defendants' motion to dismiss by securing reversal from the Fifth Circuit Court of Appeals of the district court's earlier dismissal; successfully opposed Defendant Henning's subsequent motion for judgment on the pleadings; briefed Lead Plaintiff's motion for class certification; and researched and analyzed the applicable

law with respect to the claims asserted and Defendants' defenses. Reise Decl. at ¶6. Thus, Lead Plaintiff and Lead Counsel were able to assess the legal sufficiency of Lead Plaintiff's case.

In view of the litigation conducted by Lead Counsel thus far, as well as the discussions that occurred during settlement negotiations, Lead Counsel were able to fully gauge the risks of continued litigation, including the likelihood of avoiding an adverse ruling on class certification, and the substantial risk, expense, and length of time necessary to defeat summary judgment, prosecute the litigation through trial, and then succeed in any subsequent appeals. Therefore, Lead Plaintiff and his counsel had a thorough understanding of the legal and factual issues of this case, and they were in a position to negotiate a settlement that serves the interest of the Settlement Class as a whole.

### C. The Probability of Success on the Merits, Certainty of Damages, and Possible Range of Recovery Favor Approval of the Settlement

When considering the factors of probability of success on the merits, possible range of recovery, and certainty of damages, the court is guided by two principles: "The settlement terms should be compared with the likely rewards the class would have received following a successful trial and the strength of the case for plaintiffs must be balanced against the amount offered in settlement." *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 433 (S.D. Tex. 1999).

#### 1. Risks in Establishing Liability and Damages

In order to prevail on the §§10(b) and 20(a) claims at trial, Lead Plaintiff would have had the burden of establishing the liability of Defendants to the satisfaction of the jury and the Court. Lead Plaintiff would have had to prove, *inter alia*, that US Unwired's Class Period statements contained a material misstatement or omission. Accordingly, in order to prevail on his claims, Lead Plaintiff would have to prove Defendants acted with scienter in publicly disseminating misleading information, that the information was material to investors in determining whether to invest in US

Unwired securities, and that the information materially affected the price of the securities and thereby caused damage to the Settlement Class.  *See generally Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001).  Defendants vigorously disputed each of these elements, as well as whether the class suffered any losses as a result.

Although Lead Plaintiff believes his claims are meritorious, further litigation to establish liability posed a significant threat to any class-wide recovery, especially in light of the Private Securities Litigation Reform Act ("PSLRA").  *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  Defendants raised strong challenges to Plaintiff's motion for class certification, thus making class certification a large risk in this Circuit which requires proof of loss causation at the certification stage.  *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007).  Also, assuming Lead Plaintiff has developed sufficient evidence to defeat any future motion for summary judgment, at trial the risks of establishing liability posed by the conflicting testimony and evidence would be exacerbated by the unpredictability of a lengthy and complex jury trial; and the risk that the jury would find that some or all of the asserted misrepresentations and omissions were not material.

Moreover, if Lead Plaintiff was able to overcome the obstacles to establishing liability at trial, counsel are mindful of the additional risks of proving damages.  There would likely be starkly contrasting testimony by each side's experts, and Lead Counsel recognizes the distinct possibility that a jury could be swayed by experts for the Defendants.  Indeed, Defendants' experts would likely contend that much or all of the losses experienced by Settlement Class Members were due to factors unrelated to any conduct of Defendants, thereby limiting any potential recovery by the Settlement

6

Class.  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); s*ee also Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000) (stating jury can believe whichever expert it finds more credible).  Thus, even if Lead Plaintiff prevailed in establishing liability, additional risks would remain in establishing the existence and scope of damages.  Lead Counsel were therefore cognizant of the fact that, had the case proceeded to trial, it may have been very difficult to recover all, or even most, of the damages sustained.

### 2. Possible Range of Recovery

While Lead Plaintiff contends that the likely provable aggregate damages of the Settlement Class could range as high as $125 million, such result assumes that ***all significant liability and damage issues would have been resolved in Lead Plaintiff's favor***.  Additionally, this range does not include consideration of "confounding" information or market manipulation, for which there may be an additional significant reduction of the estimated recoverable damages.  Setting aside the possibility that actual provable damages could have ended up to be a small fraction of Lead Plaintiff's preliminary damage analysis, a study by National Economic Research Associates ("NERA") states that in 2003, the median percentage of investor losses obtained in shareholder class action settlements was 2.8%.  *See* Elaine Buckberg, Todd Foster, and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003 Early Update*, at 8 (NERA Feb. 2004).  The subsequent NERA April 2006 study includes a chart that indicates the median ratio of the settlement

amount to investor losses for 2004 and 2005 was 2.4% and 2.8% respectively.  *See* Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., at 8 (NERA Apr. 2006).

Based on these statistics, this recovery – which obtains nearly 8% of investor losses – easily exceeds other settlements of its kind.  Moreover, courts routinely approve settlements providing recoveries representing a small percentage of the potential recovery.  It is well-settled law that a settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.  *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).  Indeed, the Second Circuit has observed:

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.
>
> \*     \*     \*
>
> In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974).

Thus, this multi-million dollar recovery is a very good result for the Settlement Class, representing nearly 8% of Lead Plaintiff's estimate of recoverable damages.  *See Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004) (upholding district court's approval of settlement because it was not an abuse of discretion to discount for the possibility of losing "even if the monetary and compensatory relief provided by the settlement [was] not comparable to the relief provided in other cases").  Accordingly, this substantial monetary recovery is well within the range of reasonableness and therefore warrants final approval.

8

### D. The Opinions of Lead Counsel and Absent Class Members Support Approval of the Settlement

This case has been litigated and settled by experienced and competent counsel on both sides. Lead Counsel are well known for their experience and success in complex class action litigation such as this. Reise Decl. at ¶61. As the Fifth Circuit has recognized, courts should heavily rely on the judgment of competent counsel, terming them the "linchpin" of an adequate settlement. *Reed*, 703 F.2d at 175. Where counsel determines that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Here, Lead Counsel have litigated this case for the better part of six years, which includes briefing Defendants' motion to dismiss, appealing the district court's dismissal to the Fifth Circuit, briefing Defendant Henning's motion for judgment on the pleadings, briefing Lead Plaintiff's motion for class certification, and participating in two mediation sessions. Given the posture of the case, Lead Counsel submit that this settlement is a significant recovery for the Settlement Class and should be approved.

Moreover, the response to the settlement has been overwhelmingly positive. Notices of settlement were sent to 83 US Unwired shareholders whose names were obtained from Defendants' records, along with 546 nominees and brokers whose names are maintained by the Claims Administrator. In addition, a summary notice was published in the national edition of *Investor's Business Daily* on September 23, 2010.[3] Finally, an additional 1,877 notices have been sent to

---

[3] *See* paragraphs 2 through 6 of the accompanying Affidavit of RSM McGladrey, Inc. regarding the mailing of the Notice of Pendency and Proposed Settlement of Class Action and publication of the Summary Notice.

potential Settlement Class Members as a result of requests from individuals, nominees, and brokers. Reise Decl. at ¶46. The time period for objecting to the settlement expires on November 17, 2010. As of the date of this filing, Lead Plaintiff's counsel have not received any objections to the settlement or requests for exclusion from the Settlement Class.[4] Notwithstanding, even when a large number of objections are received, that fact does not stand in the way of approval of the settlement. *See Flinn*, 528 F.2d at 1173.

## IV.  THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem*, 521 U.S. 591. Rule 23(a) sets forth four prerequisites to class certification. These four requirements are referred to in the short-hand as: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy" of representation. *Amchem*, 521 U.S. at 613. In addition, the class must meet one of the three requirements of Rule 23(b). *See* Fed R. Civ. P. 23. As outlined in Lead Plaintiff's Unopposed Motion for Preliminary Approval and Incorporated Memorandum of Law (Dkt. No. 192), the Settlement Class easily satisfies Rule 23's requirements and should therefore be certified.

Here, numerosity is satisfied by the thousands of potential Settlement Class Members who traded millions of US Unwired shares during the Class Period and for whom joinder is impracticable. *See In re Oca, Inc. Sec. and Derivative Litig.*, Civ-A No. 05-2165 Section R(3), 2008

---

[4] Should any timely objections be received, Lead Counsel will address them in a reply memorandum to be filed no later than December 10, 2010.

U.S. Dist. LEXIS 84869, at *26 (E.D. La. Oct. 17, 2008) ("The Fifth Circuit has presumed satisfaction of the numerosity requirement in class actions involving nationally-traded securities."). Commonality is similarly satisfied where the overarching question applicable to all Settlement Class Members is whether Defendants made misrepresentations or omitted information necessary to be disclosed, and whether the alleged misrepresentations or omissions were material. *See id*. at *27.

Lead Plaintiff's claims are typical of other Settlement Class Members' claims because he purchased US Unwired securities during the Class Period, is a member of the Class he seeks to represent, and thus has the same claims as those alleged on behalf of the Settlement Class. *See Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 479 (E.D. La. 2006) ("[b]ecause the claims of the named plaintiff[] and the proposed class arise from the same conduct and are based on the same legal theory . . . the typicality requirement of Rule 23(a)(3) is satisfied"). Moreover, Lead Plaintiff satisfies each prong of the adequacy test under Rule 23(a)(4). *See Oca*, 2008 U.S. Dist. LEXIS 84869, at *29-*30. His interests are squarely in line with those of the Settlement Class, and he has retained highly qualified and experienced counsel to conduct this litigation.

Finally, the Settlement Class may be properly certified under Rule 23(b)(3) because common issues predominate over individual issues and the class action mechanism is superior to other methods of adjudication. Here, the same set of operative facts, and the issues of falsity, materiality, scienter, and causation are common to all Settlement Class Members and therefore predominate over any individual issues. *See id*. at *34. Moreover, as set forth in his motion for class certification, Lead Plaintiff has demonstrated loss causation and gained the resumption of reliance under the fraud-on-the-market theory. *See* Lead Plaintiff Billy Lormand's Motion for Class Certification and Incorporated Memorandum of Law (Dkt. No. 170). In addition, resolution of this case through a

class action is superior to litigating thousands of individual claims at great expense to claimants and to the Court. Thus, the Settlement Class satisfies all of the requirements of Rule 23(a) and (b)(3) and should be certified in conjunction with this settlement.[5]

## V.   THE PLAN OF ALLOCATION IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standard of review applicable to the settlement as a whole – the plan must be "fair, adequate and reasonable and [] not the product of collusion between the parties." *In re Chicken Antitrust Litg. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). This analysis is to be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Id.* Moreover, an allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993); *In re Am. Bank Note Holographics Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord Chicken Antitrust*, 669 F.2d at 238. Numerous courts have approved distribution plans that allocate the settlement proceeds according to the relative strengths and weaknesses of the various claims. *See Warner Commc'ns*, 618 F. Supp. at 745; *Weinberger v. Kendrick*, 698 F.2d 61, 78 (2d Cir. 1982). Moreover, there is no requirement that a

---

[5]   Moreover, and as demonstrated throughout this case, Lead Counsel satisfy the requirements of Rule 23(g).

settlement must benefit all class members equally. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class members did not share in recovery).

The decisions cited above acknowledge that the goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. In order to develop a fair distribution plan, Lead Counsel, in conjunction with RSM McGladrey, Inc., drafted a Plan of Allocation that would result in a fair distribution of the available settlement proceeds. Lead Counsel discussed their theories of liability and damages with their damages consultant, who used this information along with available economic evidence to develop the plan currently before the Court for approval. The Plan of Allocation – which is set forth in detail in the Settlement Notice sent to all potential Settlement Class Members – reflects the reaction of the market to new information about US Unwired at the end of the Class Period. The Plan of Allocation establishes a claim value based on the market's reaction to that new information. Reise Decl. at ¶¶49-53. Lead Plaintiff's counsel believe that the Plan of Allocation will equitably apportion the net settlement proceeds among all eligible Settlement Class Members using the principles set forth in the case law cited above. It is also worth noting that, to date, no Settlement Class Members have objected to the proposed Plan of Allocation.

## VI. CONCLUSION

This settlement is a significant recovery for the Settlement Class, given the available defenses, potential disputes over damages, the presence of skilled counsel for all parties, the

complexity of the facts at issue, further substantial expense if this litigation were to continue, the risks attendant to continued litigation, the sizable present benefit of the settlement, and the arm's length negotiations.  Therefore, for the reasons discussed herein and in the Reise Declaration, Lead Plaintiff respectfully requests this court to approve the settlement of this litigation and the Plan of Allocation of settlement proceeds as fair and adequate.

DATED:  November 9, 2010        ROBBINS GELLER RUDMAN
                                   & DOWD LLP


                                        /s/ Jack Reise
                                   ───────────────────────────
                                        JACK REISE

                                JACK REISE, Admitted *Pro Hac Vice*
                                Florida Bar No. 058149
                                DOUGLAS WILENS, Admitted *Pro Hac Vice*
                                Florida Bar No. 0079987
                                120 East Palmetto Park Road, Suite 500
                                Boca Raton, FL  33432
                                Telephone:  561/750-3000
                                561/750-3364 (fax)

                                *Lead Counsel for Plaintiffs*

                                LAW OFFICE OF PATRICK H. YANCEY, APLC
                                PATRICK H. YANCEY (23,381)
                                761 West Tunnel Blvd., Suite C
                                Houma, LA  70360
                                Telephone:  985/853-0904
                                985/853-0992 (fax)

                                *Liaison Counsel*

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which caused Notices of Electronic Filing to be generated by ECF to all registered participants.

/s/ Jack Reise
JACK REISE